UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NAVEEN KUMAR,<br><br>                Petitioner(s),<br><br>    v.<br><br>CAMMILLA WAMSLEY, et al.,<br><br>                Respondent(s). | CASE NO. C25-2055-KKE<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Naveen Kumar, proceeding through counsel, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. No. 1. Kumar is a native and citizen of India who has been ordered removed but granted protection from removal to his home country because of his experience of persecution there as a gay man with human immunodeficiency virus ("HIV"). He is currently detained at an immigration detention facility in Tacoma, Washington.

Pursuant to a recent policy concerning so-called "third country" removals, Immigration and Customs Enforcement ("ICE") served Kumar with a notice stating it intends to remove him to Uganda, a country to which he has no connection and where he fears he will be persecuted again. The notice did not inform Kumar he could apply for protections against removal, and ICE's policy prohibits officers from asking noncitizens if they fear being removed to a third country—*i.e.*, a country not listed on a noncitizen's removal order. The policy also permits removal within days

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 1

or sometimes hours after the noncitizen is notified of the country of removal. In some cases, it permits ICE to remove noncitizens without any notice of where they are being sent.

Under the Due Process Clause of the Fifth Amendment, noncitizens are entitled to reasonable notice of the country to which they will be removed and an opportunity to present claims for various forms of protection from removal. Because ICE's policy and its notice to Kumar about removal to Uganda violate these requirements, the Court will grant Kumar's habeas petition and issue relief enjoining further violations of his due process rights.

## I.   BACKGROUND

**A.   Legal Framework**

1.   Removal Proceedings

Typically, when the Government seeks to remove an individual, it does so through removal proceedings involving an evidentiary hearing before an Immigration Judge ("IJ"). 8 U.S.C. § 1229a. In removal proceedings, the IJ determines both whether the individual may be removed from the United States and also the country to which they will be removed. *Id.*; 8 U.S.C. § 1231(b)(2)(A); 8 C.F.R. § 1240.10(f). The Immigration and Nationality Act ("INA") sets out a multi-tiered process for determining the country of removal.

In the first instance, the noncitizen may select a country. 8 U.S.C. § 1231(b)(2)(A); 8 C.F.R. § 1240.10(f). If the noncitizen declines to do so, the IJ will designate one and may also designate alternative countries. 8 C.F.R. § 1240.10(f). In selecting a country of removal, the IJ must follow a statutory hierarchy that prioritizes countries with a closer connection to the noncitizen before the IJ may select from other countries with looser connections: First (after the noncitizen's selected country) the IJ must select the "country of which the [noncitizen[1]] is a

---

[1] "This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 2

subject, national, or citizen[.]" 8 U.S.C. § 1231(b)(2)(D). Next, if removal to that country is impossible, the IJ selects from a menu of countries with some connection to the individual. *See, e.g., id.* § 1231(b)(2)(E)(i) (country from which the noncitizen was admitted to the United States), (iv) (country of birth), (v) (country that had sovereignty over noncitizen's birthplace). Finally, only if it is "impracticable, inadvisable, or impossible to remove the [noncitizen] to each country described" above, the statute permits removal to any "country whose government will accept the" noncitizen. *Id.* § 1231(b)(2)(E)(vii).

    2. <u>Protection From Removal</u>

Meanwhile, the noncitizen is entitled to apply for various protections, including asylum, withholding of removal, and protections under the Convention Against Torture ("CAT"). 8 C.F.R. §§ 1240.11(c)(1), 1208.16. While some of these protections are discretionary, others must be awarded if the conditions are met. Withholding of removal—which prevents removal to any country where an IJ finds the individual is likely to be persecuted—is one such mandatory form of protection. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16; *see also Moncrieffe v. Holder*, 569 U.S. 184, 187 n.1 (2013) ("[T]he Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility [for withholding of removal or CAT protections]."). Another is protection under the CAT, which prevents removal to a country where the IJ determines the individual is likely to be tortured. *See* Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681–822 (1998) (codified as Note to 8 U.S.C. § 1231); 8 C.F.R. §§ 208.16–18, 1208.16–18; 28 C.F.R. § 200.1; *see also Moncrieffe*, 569 U.S. at 187 n.1.

Withholding of removal and CAT protection only restrict *where* the Government may remove a noncitizen to, not *whether* the noncitizen is subject to removal. Thus, even if the IJ grants such protection, the removal order remains valid and enforceable, albeit not to the identified

country or countries of risk. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(f); *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021); *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (stating that a grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country").

   3. Third Country Removals

If the Government has a removal order but no country to which an IJ has authorized removal—for instance, if the IJ granted withholding of removal to the country designated in the order—it can remove the noncitizen to a third country, meaning any country not designated on the removal order. *D.V.D. v. U.S. Dep't of Homeland Sec.*, CV 25-10676-BEM, 2025 WL 942948, at *1 (D. Mass. Mar. 28, 2025). In doing so, the Government must follow the same multi-tiered process for selecting a country of removal that applied in the removal proceedings. 8 U.S.C. § 1231(b)(2). And in all cases, the INA prohibits removal to countries in which a noncitizen would face persecution:

> Notwithstanding paragraphs [b](1) and [b](2), the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1231(b)(3)(A). Similarly, under FARRA, which codified CAT protections, a noncitizen may not be removed to any country where they would be tortured. *See* 28 C.F.R. § 200.1; 8 C.F.R. §§ 208.16–18, 1208.16–18. Put differently, third country removals are subject to the same mandatory protections that exist in removal proceedings.

**B.    ICE's Third Country Removal Policy**

In March 2025, the District of Massachusetts entered a temporary restraining order enjoining ICE from "[r]emoving any individual subject to a final order of removal from the United

States to a third country, i.e., a country other than the country designated for removal in immigration proceedings" unless certain conditions were met. *D.V.D.*, 2025 WL 942948, at *1.

On March 30, 2025, the Department of Homeland Security ("DHS") issued updated guidance on third country removals. Dkt. No. 4-1. The guidance states that noncitizens may be removed to a third country without notice or other "further procedures" if the country has given diplomatic assurances that individuals "removed from the United States will not be persecuted or tortured" and the Department of State deems those assurances credible. *Id.* at 2–3. If the country has not provided assurances (or the assurances are deemed incredible), DHS will notify the noncitizen of its intent to remove them to the third country but "will not affirmatively ask whether the [noncitizen] is afraid of being removed" there. *Id.* Only if the noncitizen affirmatively expresses a fear of removal will the officer refer them to United States Citizenship and Immigration Services ("USCIS") for a screening interview to assess eligibility for withholding of removal or CAT protection. *Id.* at 3. If USCIS determines the noncitizen likely qualifies for protection, it will refer the matter to the immigration court or to ICE, depending on the circumstance. *Id.* And if the referral is to ICE, rather than to the immigration court, ICE may either move to reopen the noncitizen's removal proceedings "for the sole purpose of determining eligibility for protection" or it may designate a different country of removal. *Id.*

Weeks after this guidance was issued, the district court in *D.V.D.* certified a plaintiff class and issued a class-wide preliminary injunction establishing procedures DHS and ICE had to follow before removing noncitizens to a third country. *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 394 (D. Mass. 2025); *see also D.V.D. v. U.S. Dep't of Homeland Sec.*, CV 25-10676-BEM, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025) (memorandum offering more guidance on compliance with the preliminary injunction). The United States Supreme Court stayed the

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 5

preliminary injunction without explanation pending appeal in the First Circuit. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025).

On July 9, 2025, following the Supreme Court's stay, ICE issued guidance to its agents reinstating the March 30 DHS memorandum. Dkt. No. 4-2. The policy set out in the July 9 guidance largely mirrors the March 30 memorandum, but adds that, in cases where no diplomatic assurances exist, ICE will serve a "Notice of Removal" identifying the country of removal, translate the notice for the noncitizen, and "generally wait at least 24 hours following service … before effectuating removal." *Id.* at 2. "In exigent circumstances[,]" however, ICE may, with proper approval, execute removal in as little as six hours after service. *Id.*

C.      **Kumar's Arrival, Detention, and Notice of Removal**

Kumar is a native and citizen of India who has been ordered removed and granted withholding of removal to India due to his status as a gay man with HIV. Dkt. No. 3 ¶¶ 1, 6. In May 2023, he entered the United States without admission or parole and surrendered himself to immigration officials at the border. *Id.* ¶ 2; Dkt. No. 10-1 ¶ 4. Shortly thereafter, DHS released him on his own recognizance and eventually required him to attend regular check-ins with ICE. Dkt. No. 3 ¶ 2, Dkt. No. 10-1 ¶ 5. A month after his release, Kumar applied to the immigration court for asylum and withholding of removal. Dkt. No. 3 ¶ 3, Dkt. No. 10-1 ¶ 6. He was granted a work permit and, from early 2024 until his current detention, worked in California as a delivery driver for Uber, Door Dash, and Walmart. Dkt. No. 3 ¶ 3.

In March 2025, Kumar was arrested for shoplifting. Dkt. No. 10-1 ¶ 7. The record does not reflect whether he was ultimately convicted of an offense. But about two weeks later, ICE detained Kumar during a check-in appointment and eventually transferred him to the Northwest ICE Processing Center in Tacoma, Washington. Dkt. No. 3 ¶ 4; Dkt. No. 10-1 ¶¶ 7–8.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 6

Kumar then appeared in immigration court for a hearing. Dkt. No. 10-1 ¶ 11, Dkt. No. 3 ¶ 5, Dkt. No 4-5. At the hearing, the IJ ordered Kumar removed to India but granted him withholding of removal pursuant to section 241(b)(3) of the INA, meaning Kumar demonstrated that his "life or freedom would be threatened" in his home country due to his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3); Dkt. No. 4-5. In Kumar's case, this threat stemmed from his sexual orientation and HIV status. He states in his sworn declaration that, in India, members of the Bharatiya Janata Party and the Rashtriya Swayamsevak Sangh, with the help of police officers, arrested him, beat him with wooden clubs, and raped him. Dkt. No. 3 ¶ 7. The same members killed Kumar's boyfriend and threatened Kumar's life because he is gay. *Id.* The IJ's removal order preventing ICE from removing Kumar to India does not indicate an alternative country of removal. Dkt. No. 4-5.

A week after the immigration judge granted withholding of removal to India, an ICE officer served Kumar with a notice advising him that ICE intended to remove him to Uganda instead (Dkt. No. 3 ¶ 12, Dkt. No. 4-6), a country with a "well-documented" history of "persecution and mistreatment of gays" and to which Kumar has no ties. *Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *2, n.3 (D. Mass. Oct. 1, 2018) (citing Department of State Human Rights Report finding "that gays faced discrimination, legal restrictions, societal harassment, violence, and intimidation" in Uganda (citation modified)); *see also Nantume v. Barr*, 931 F.3d 35, 39 (1st Cir. 2019) ("[T]he record … makes manifest that Uganda has historically and persistently discriminated against individuals who engage in same-sex sexual activity."); Dkt. No. 3 ¶ 11. The notice did not inform Kumar of his right to apply for withholding of removal to Uganda or CAT protection. Dkt. No. 4-5. Kumar says he informed the ICE officer he feared removal to Uganda because of his status as a gay man with HIV. Dkt. No. 3 ¶ 10. The officer does not dispute this

but states in his declaration, "I do not remember whether Petitioner expressed to me any fear of Uganda when I served him with th[e] notice." Dkt. No. 10-1 ¶ 12.[2]

Kumar filed this petition on October 21, 2025. Dkt. No. 1. A week later, ICE referred him to USCIS for an interview to determine whether he "would more likely than not be persecuted on a statutorily protected ground or tortured in Uganda." Dkt. No. 10-1 ¶ 15. The Government submitted a declaration stating that Kumar's interview was initially scheduled for October 30, 2025. *Id.* ¶ 16. But in its return, filed the day the interview was supposed to occur, the Government states the interview has been postponed and Government Counsel does not know the rescheduled date. Dkt. No. 10 at 3. Kumar filed his traverse on November 4, 2025. Dkt. No. 11. Neither party requested a hearing. Kumar's petition is now ripe for resolution.

## II.    DISCUSSION

**A.    Legal Standard**

Under 28 U.S.C. § 2241, the Court may determine a petition for writ of habeas corpus in which the petitioner asserts he is being held in custody "in violation of the Constitution or laws or treaties of the United States." "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). But "immediate physical release [is not] the only remedy under the federal writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Peyton v. Rowe*, 391 U.S. 54, 67 (1968)). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

---

[2] Kumar states he is "aware that Uganda has laws that are not friendly to LGBTQ people" and is "scared that if [he is] openly gay in Uganda [he] will be beaten, arrested, or killed." *Id.* ¶ 12. He also fears that he "will not receive treatment for HIV" in Uganda. *Id.*

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 8

### B.  Kumar is Entitled to Notice and an Opportunity to Present Fear-Based Claims

Kumar contends ICE's third country removal policy violates his due process and statutory rights on several grounds.  To begin, the policy requires no notice if ICE intends to remove a noncitizen to a third country that has provided diplomatic assurances the Department of State deems credible.  Dkt. No. 1 ¶ 87, Dkt. No. 4-2 at 2.  Where no assurances exist, the policy violates Kumar's rights by permitting ICE to notify him of the intended country of removal "mere hours before placement on a plane" without notifying his counsel, stating the intended date of removal, or advising him of his right to apply for fear-based protections.  Dkt. No. 1 ¶¶ 88–89, Dkt. No. 4-2 at 2–3.  Even if Kumar affirmatively expresses a fear of removal to the designated county, the Government's policy is to conduct a reasonable fear interview "within 24 hours of referral" (Dkt. No. 4-2 at 3), giving him "mere hours or a day or two" to contact counsel, research conditions in the designated country, and prepare for the interview (Dkt. No. 1 ¶ 95).  The Court agrees this policy fails to provide Kumar the notice and opportunity to be heard that due process demands.

"[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.  "[A]t a minimum[,]" due process requires "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). "'It is well established that the Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." *J.G.G.*, 604 U.S. at 673 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

Due to the horrific persecution and violence inflicted upon Kumar in India on account of his status as a gay man with HIV, the IJ granted him withholding of removal to that country. Notwithstanding the well-documented oppression of LGBTQ+ persons in Uganda, ICE

nonetheless inexplicably intends to remove Kumar there.[3]  It is beyond dispute that removal to a country where an individual is likely to experience persecution or torture is a substantial deprivation of liberty.  Recognizing the gravity of the interests at stake, courts in this district have concluded that due process requires the Government to give a noncitizen "sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation."  *Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)).  This requirement flows directly from Ninth Circuit precedent holding that failure "to notify individuals who are subject to deportation that they have the right to apply … for withholding of deportation to the country to which they will be deported violates … the constitutional right to due process."  *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) (citing *Kossov v. I.N.S.*, 132 F.3d 405, 408–09 (7th Cir. 1998)).  In other words, "last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country."  *Nguyen*, 2025 WL 2419288, at *18. (quoting *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016)).

Kumar claims that ICE has deprived him of and is continuing to deprive him of these baseline procedural protections via its third country removal policy.  The Court agrees.  Not only was Kumar never asked if he was afraid of being removed to Uganda or notified of his right to apply for fear-based protections, the policy provides that ICE could give him as little as a day or two to prepare for his interview with USCIS even after he affirmatively expressed a fear.[4]  As

---

[3] The callousness of this selection cannot be overlooked, and only heightens the seriousness of Kumar's due process claims.

[4] The Government emphasizes that, despite what ICE's policy allows, Kumar was in fact given almost two months between being served the notice of removal to Uganda and the initial date of his reasonable fear interview.  Dkt. No. 10 at 7.  The Government omits that ICE only referred Kumar to USCIS for an interview *after* he filed this petition, and even then, ICE notified Kumar of his interview only one day before it was initially scheduled to take place.  *Id.*

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 10

Kumar points out, applying for protection in "withholding-only" proceedings before an IJ would typically involve preparing witness testimony, documentation of country conditions, and expert reports supporting the claim to protection. Dkt. No. 1 ¶ 95. Giving "notice roughly 24 hours before removal"—as the policy allows—"devoid of information about how to exercise due process rights to contest that removal, surely does not pass muster." *A.A.R.P. v. Trump*, 605 U.S. 91, 95 (2025).

Indeed, numerous courts in this district and elsewhere have held that ICE's third country removal policy violates due process. *See, e.g., Nguyen*, 2025 WL 2419288, at *19 (holding that July 9, 2025 ICE memorandum "contravenes Ninth Circuit law" requiring notice of third country removals and opportunity to apply for fear-based protections); *Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *2 (W.D. Wash. Oct. 23, 2025) (same); *Phetsadakone v. Scott*, No. 2:25-CV-01678-JNW, 2025 WL 2579569, at *4–5 (W.D. Wash. Sep. 5, 2025); *Sagastizado v. Noem*, No. 5:25-CV-00104, 2025 WL 2957002, at *9–13 (S.D. Tex. Oct. 2, 2025) (finding petitioner likely to succeed on "claim that he cannot be removed to a third country without sufficient notice and a meaningful opportunity to raise a claim[.]"); *Y.T.D. v. Andrews*, No. 1:25-CV-01100 JLT SKO, 2025 WL 2675760, at *6 (E.D. Cal. Sep. 18, 2025) ("In this Circuit, due process requires that Petitioner be … afforded reasonable notice and an opportunity to pursue relief in relation to third country removal."). Consistent with these well-reasoned decisions, the Court concludes that Kumar is entitled to relief ensuring he receives notice of any country to which ICE

---

at 3 n.2 ("[O]n October 29, 2025, USCIS scheduled Kumar for a reasonable fear interview on October 30, 2025."). In any event, it appears the delay between the notice of removal and the referral for the interview was due only to the fact that ICE was unaware that Kumar had expressed a fear of removal to Uganda. The ICE officer who served the notice of removal testified that he could "not remember" (and apparently had no record) whether Kumar expressed such a fear or not. Dkt. No. 10-1 ¶ 12. This further underscores the importance of the requirement articulated in *Aden* that ICE "ask the noncitizen whether he or she fears persecution or harm upon removal to the designated country and memorialize in writing the noncitizen's response. This requirement ensures DHS will obtain the necessary information from the noncitizen to comply with § 1231(b)(3) and avoids the situation … where the parties dispute whether petitioner [expressed a fear of persecution in the designated country]." 409 F. Supp. 3d at 1019.

intends to remove him and a reasonable opportunity to apply for withholding of removal or CAT protection.

Presumably in light of the overwhelming authority against it, the Government does not defend the ICE third country removal policy on the merits. Instead, the Government advances two procedural grounds for dismissing Kumar's petition. First, the Government contends the petition is moot because DHS has now referred Kumar to USCIS for a screening interview to assess his eligibility for protection from removal to Uganda. Dkt. No. 10 at 6. Thus, the "process that Kumar … seeks has already been put in motion." *Id.* at 7. Second, the Government contends Kumar's petition should be dismissed because he is a member of the plaintiff class in *D.V.D.* and is seeking to "duplicate[] the claims and seek[] the same relief as the class action." *Id.* at 8. Neither ground is persuasive.

C.     **Mootness**

To begin, Kumar's petition is not moot simply because ICE has referred him for a reasonable fear interview as to Uganda. "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "The burden of demonstrating mootness is a heavy one." *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001). And a case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *United States v. Yepez*, 108 F.4th 1093, 1099 (9th Cir. 2024) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).

Here, the reasonable fear interview to which Kumar was referred only affects a portion of the relief he seeks.[5] Much of Kumar's petition is aimed at ensuring adequate process *after* he is screened for eligibility for protections against removal to Uganda. For instance, in the event USCIS determines Kumar has no reasonable fear of removal, he seeks adequate time to prepare a motion to reopen his removal proceedings. Dkt. No. 1 at 22. And if ICE designates a country of removal other than Uganda, he seeks notice of the designation in his native language and adequate time to prepare for another reasonable fear interview with respect to that country. *Id.* Notably, while the Government claims "the reasonable fear screening and subsequent process" is already "in motion[,]" it does not say it will follow the process Kumar requests. Dkt. No. 10 at 7.

Nor has the Government disavowed the third country removal policy Kumar asserts has violated and continues to violate his due process rights. Where alleged harm "is directly traceable to a written policy … there is an implicit likelihood of its repetition in the immediate future." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 986 (9th Cir. 2007) (quoting *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001)). Here, Kumar received a notice of removal that violated his due process rights by failing to notify him that he could apply for fear-based protections. *See Andriasian*, 180 F.3d at 1041. Were ICE to designate a different country of removal, its policy would *require* ICE officers to repeat that same violation. Dkt. No. 4-2 at 2 ("ERO will <u>not</u> affirmatively ask whether the alien is afraid of being removed to the country of removal." (emphasis in original)). Moreover, the policy would permit Kumar to be removed within 24 hours of being served the notice—or less in "exigent circumstances"—and provides that any reasonable fear interview should happen "within 24 hours of referral[,]" giving Kumar mere hours or days to contact counsel, research the new country of removal, and prepare for the interview. *Id.* at 2–3.

---

[5] Moreover, the Government concedes the interview was postponed and has apparently not been rescheduled. Dkt. No. 10 at 3 n.2.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 13

And, of course, if ICE intends to remove Kumar to a country that has provided diplomatic assurances, the policy permits it to do so without *any* notice. *Id.* at 2.

Because the Court could grant effectual relief to ensure Kumar receives the process to which he is due, his petition is not moot.

D.  **Membership in the *D.V.D.* Class**

Next, the Government contends Kumar's claims are barred because he is a member of the certified class in *D.V.D.* For support, it relies on *Pride v. Correa*, in which the Ninth Circuit held that, when "the complainant is a member in a class action seeking the same relief[,]" a court "may dismiss those portions of the complaint which duplicate the class action's allegations and prayer for relief." 719 F.3d 1130, 1133 (9th Cir. 2013) (citation modified) (quoting *Crawford v. Bell*, 599 F.2d 890, 892–93 (9th Cir. 1979)). But the Ninth Circuit went on to explain that "a district court may not 'dismiss[] those allegations … which go beyond the allegations and relief prayed for in [the class action]." *Id.* (first and last alterations in original) (quoting *Crawford*, 599 F.2d at 893). Here, dismissal would be inappropriate because Kumar's individual claims seek relief he is unable or unlikely to obtain in the *D.V.D.* litigation.

In *Nguyen*, the court considered the same argument by the Government and found itself capable of adjudicating individual claims regarding third country removal notwithstanding *D.V.D.* for several reasons. First, the petitioner's due process claim was not identical to the claims in the *D.V.D.* class action because—like Kumar—petitioner argued "that due process requires he have a meaningful opportunity to seek withholding of removal, a claim not at issue in *D.V.D.* (which concerns claims under [CAT])." 2025 WL 2419288, at *20. Second, the habeas petition did not "raise a 'complaint to systemic relief for [detainees fearing third-county removal] generally[,]'" as *D.V.D.* did. *Id.* at *21. Finally, without the opportunity to pursue his individual claim for

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 14

injunctive relief, the petitioner would have been "left 'powerless to petition the courts for redress' until the *D.V.D.* class action has been 'fully resolved.'" *Id.* (quoting *Pride*, 719 F.3d at 1137).

Each of these reasons applies with equal force here. And as the Government acknowledges, dismissal of individual claims that duplicate a class action is not required, rather, it is "within the court's discretion" and grounded in "its inherent power to control its own docket." Dkt. No. 10 at 8 (citing *Crawford*, 599 F.2d at 893). As the Ninth Circuit explained in *Crawford*, "[a] court *may choose* not to exercise its jurisdiction when another court having jurisdiction over the same matter has entertained it and can achieve the same result." 599 F.2d at 893. Here, ample authority supports the Court's exercise of jurisdiction over Kumar's petition.

To begin, as one court has explained, it is "counterintuitive that non-opt-out class membership, for the purposes of granting a preliminary injunction to prevent removal without due process, could prevent individuals from making their own claims for due process while that injunction is stayed on a class-wide basis." *Sagastizado*, 2025 WL 2957002, at *7–8. It is also unclear, for reasons separate from the merits of his claims, that Kumar could ultimately obtain relief through the *D.V.D.* class action. The INA generally prohibits district courts from issuing class-wide injunctions ordering federal officials to take or refrain from taking actions to enforce certain provisions of immigration law governing, among other things, the removal of noncitizens. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550–51 (2022); 8 U.S.C. § 1252(f)(1). That prohibition "does not extend to individual cases." *Id.* at 550 (quoting *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 481–482 (1999)). As the court in *Nguyen* explained: "[T]he government is arguing in *D.V.D.* that injunctive relief cannot be granted to the class, and may only be pursued (if at all) through individual cases, while arguing here that Petitioner's individual claim should be barred because his injunctive claims should be adjudicated as part of the *D.V.D.* class." 2025 WL 2419288, at *21. Setting aside the inconsistency in these positions, by the time the issues

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 15

of class-wide relief are resolved in *D.V.D.*, Kumar could be removed or subjected to further due process violations under the third country removal policy. The Court declines to exercise its discretion as to render Kumar without a remedy to enforce his due process rights.

Finally, the Government contends that Kumar's petition should be dismissed because "[t]he Supreme Court's stay of the preliminary injunction" in *D.V.D.* is "precedent and … binding on Kumar" as a member of the *D.V.D.* class. Dkt. No. 10 at 8. For the reasons thoroughly explained in *Nguyen*, the Court disagrees. *See* 2025 WL 2419288, at *21–23. If a ruling by the Supreme Court granting an emergency stay "makes it clear that the movant's position on a legal question is likely correct, lower courts can—and should—treat the Court's decision as precedential." *Nguyen*, 2025 WL 2419288, at *22 (quoting Trevor N. McFadden & Vetan Kapoor, *The Precedential Effects of the Supreme Court's Emergency Stays*, 44 HARV. J.L. & PUB. POL'Y 827, 857 (2021)). But the Supreme Court's order staying the *D.V.D.* preliminary injunction "offered no such reasoning." *Id.* at *23 (citing *D.V.D.*, 145 S. Ct. at 2153). As a result, this Court cannot ascertain the basis for the stay. Among the Government's "primary arguments" to support the stay was "that the *D.V.D.* court had no power to enter classwide injunctive relief" under 28 U.S.C. § 1252(f)(1). *Id.* That issue "would have no bearing on the merits of individual habeas petitions" like Kumar's. *Id.* Thus, absent contrary guidance from the Supreme Court, this Court must follow "well-established" Ninth Circuit precedent mandating notice and an opportunity to be heard in connection with third country removals. *Id.* (citation omitted).

In sum, Kumar's membership in the *D.V.D.* class does not prevent the Court from adjudicating his claims for individual relief in this habeas action.

**E.     Scope of Relief**

The final issue is whether the relief Kumar requests is appropriately tailored to preventing his removal without meaningful notice and an opportunity to present claims for fear-based

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 16

protection. Kumar requests a process modeled on the relief granted in the preliminary injunction in *D.V.D.*—including ten days to prepare for a reasonable fear interview with respect to any third country removal, and fifteen days following an adverse determination in such an interview to move to reopen his removal proceedings and apply for protection before the immigration court. Dkt. No. 1 at 21–22. The district court in *D.V.D.* adopted the fifteen-day timeframe based on two draft forms prepared by DHS and a predecessor agency that, while never "formally adopted[,]" reflected "the agencies' determination—on two separate occasions spanning a period of nearly 20 years—of an appropriate period of time during which [a noncitizen] should be permitted to object to an adverse determination." *D.V.D.*, 778 F. Supp. 3d at 392–93 nn. 46, 49. It adopted the ten-day timeframe after finding the Government violated the preliminary injunction by removing six class members to a third country on "fewer than 24 hours' notice[.]" *D.V.D.*, 2025 WL 1453640, at *1. Ten days is also the timeframe in which reasonable fear interviews are to be completed in other contexts pursuant to regulation. *See* 8 C.F.R. § 208.31(b) (concerning interview procedure for individuals with reinstatement or administrative removal orders).

The Government states that "prescrib[ing] a precise timeline" for conducting the "reasonable fear review process" would be "unreasonabl[e]" (Dkt. No. 10 at 7), but does not explain why the process requested is not tailored to the deprivation of liberty at stake—namely, risk of persecution and torture. *See Mathews v. Eldridge*, 424 U.S. 319, 349 (1976) (requiring "that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard" (citation modified)). And Kumar is not requesting a precise timeline, but rather a minimum amount of time before he is removed in which he can meaningfully present a fear-based claim or file a motion to reopen. Several courts have found the same relief appropriate as to noncitizens facing similar circumstances. *See Y.T.D.*, 2025 WL 2675760, at *13 (enjoining removal without giving petitioner "a minimum of ten days" to raise

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 17

fear-based claims and "a minimum of fifteen days" after an adverse "reasonable fear" determination to move to reopen); *Vaskanyan v. Janecka*, No. 5:25-CV-01475-MRA-AS, 2025 WL 2014208, at *9 (C.D. Cal. June 25, 2025) (same); *M.T.M. v. Andrews*, No. 2:25-CV-08208-SRM-PD, 2025 WL 2995053, at *2 (C.D. Cal. Sept. 24, 2025) (same). Consistent with these decisions, the Court concludes Kumar's proposed process is proportional to the need to ensure "a reasonable opportunity to raise and pursue his claim for withholding of deportation" or CAT protection. *Aden*, 409 F. Supp. 3d at 1009.

### III. CONCLUSION

Accordingly, the Court GRANTS the Petition for Writ of Habeas Corpus (Dkt. No. 1) and ORDERS that Respondents and all their officers, agents, servants, employees, attorneys, and persons acting on their behalf in concert or in participation with them are ENJOINED from removing Petitioner to any country not designated on his order of removal without complying with the following procedures:

1) With respect to removal to Uganda, if Petitioner is found to have a reasonable fear of removal in his reasonable fear interview, Respondents must move to reopen Petitioner's removal proceedings to allow Petitioner to present a full claim for relief under 8 U.S.C. § 1231(b)(3) and FARRA;

2) If Petitioner is determined not to have such a fear, Respondents must allow an additional fifteen days from said determination for Petitioner to file a motion to reopen with the immigration court or Board of Immigration Appeals, as appropriate;

3) With respect to removal to any other country besides India, Respondents must provide written notice of removal to that country at least ten days prior to the removal. Notice to Petitioner must be in his native language. Upon providing such notice, Respondents must ask whether Petitioner has a fear of removal to the third country. If Petitioner

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 18

expresses such a fear, then Respondents must provide a reasonable fear interview to screen for Petitioner's fear of persecution and torture;

4) If, in the reasonable fear interview, Petitioner is found to have a reasonable fear of removal to the country, Respondents must move to reopen Petitioner's removal proceedings to allow Petitioner to present a full claim for relief under 8 U.S.C. § 1231(b)(3) and FARRA;

5) If Petitioner is not found to have such a fear, Respondents must allow an additional fifteen days from such determination for Petitioner to file a motion to reopen with the immigration court or Board of Immigration Appeals, as appropriate.

Dated this 17th day of November, 2025.

*Kymberly K. Evanson*

Kymberly K. Evanson
United States District Judge